## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**BERNADINE D SOILEAU**          **CASE NO.  6:19-CV-00537**

**VERSUS**                              **JUDGE DOUGHTY**

**MIDSOUTH BANCORP INC ET AL   MAGISTRATE JUDGE HANNA**

### REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) filed on behalf of Midsouth Bank, N.A. (Rec. Doc. 8). Plaintiff, Bernadine D. Soileau, opposes the Motion (Rec. Doc. 10).

The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that Midsouth's Motion be DENIED IN PART and DENIED WITHOUT PREJUDICE IN PART, and that Plaintiff be given an opportunity to amend her Petition.

### Factual Background

Plaintiff, Bernadine Soileau, individually and in her capacity as executrix of the estate of her late husband, John Soileau, filed this lawsuit after an unidentified individual nearly depleted their checking account at Midsouth Bank. According to

Plaintiff's Third Amended Complaint, Midsouth allowed unauthorized transfers to occur from the account beginning in December 2016 until August 2017, when Plaintiff and her late husband discovered the unauthorized transfers. (Rec. Doc. 1-4, at 62, ¶5-7). Plaintiff alleged that their son told her and Mr. Soileau that their bank statements had been sent to the Houston address of their business which had been sold, and Plaintiff and Mr. Soileau had no reason otherwise to believe that improper activity was occurring in their account. (Rec. Doc. 1-4, at 62, ¶8). Upon learning of the unauthorized transfers in August 2017, Plaintiff and Mr. Soileau advised Midsouth of the improper transfers, closed the account, and opened a second account with the remaining funds. (Rec. Doc. 1-4, at 62, ¶9). Within weeks, Plaintiff alleged that the second account was granted unauthorized access and numerous unauthorized electronic transfers and payments occurred. (Rec. Doc. 1-4, at 62, ¶10).

Plaintiff filed suit in Louisiana state court on February 8, 2018 asserting three counts against the sole defendant, Midsouth: Count 1 – Violation of the Electronic Funds Transfer Act (EFTA);[1] Count 2 – Conversion under Louisiana tort law; and Count 3 – Negligence. (Rec. Doc. 1-4, at 63, ¶16-25). Midsouth filed the instant

---

[1]    Plaintiff initially pled Count 1 as "Violation of State Commercial Laws" in her original Petition and First and Second Amended and Restated Petitions. (Rec. Doc. 1-2; at 5, ¶17-19; Rec. Doc. 1-3, at 4, ¶17-19; Rec. Doc. 1-3, at 44, ¶16-18). In her Third Amended and Restated Petition, Plaintiff replaced Count 1 in its entirety to include only violations of the EFTA. As such, the Court does not address the previously pled, and now replaced, allegations regarding State Commercial Laws.

Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) on the grounds that the suit is time barred by the EFTA, and that Plaintiff failed to allege facts sufficient to state claims for conversion and negligence under Louisiana tort law.

## **Applicable Law**

### I.    **Law applicable to Rule 12(b)(6) Motions to Dismiss.**

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a

factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a

4

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556).  See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir.2008). With these precepts in mind, the Court considers Plaintiff's Third Amended and Restated Complaint.

## II.    <u>Whether Plaintiff has stated a claim under the Electronic Funds Transfer Act.</u>

Plaintiff asserts in Count 1 that Midsouth violated the Electronic Funds Transfer Act. (Plaintiff's Third Supplemental and Amended Complaint at Rec. Doc. 1-4 at 63). The purpose of the EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," and its "primary objective…is the provision of individual consumer rights." 15 U.S.C. §1693(b).

Although neither Plaintiff nor Midsouth identified any particular provision under the EFTA which Midsouth is alleged to have violated in allowing the unauthorized transfers to occur, the Court finds §1693g to be the most applicable. Pursuant to that section, a financial institution need not reimburse "the consumer for losses the financial institution establishes would not have occurred but for the failure

of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer." 15 U.S.C. §1693g. In simpler terms, a financial institution is obligated to reimburse a consumer for unauthorized electronic transfers about which it is timely notified.

### A. <u>Whether Plaintiff's claims are time-barred by the EFTA.</u>

A consumer's claim for reimbursement (or any other claim for EFTA violations) must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. §1693m(g). It is unsettled whether EFTA's one-year limitation is triggered exclusively by the initial unauthorized transfer, as Midsouth contends, or, rather, independently by each unauthorized transfer, as Plaintiff contends. Several district courts have taken the position advocated by Midsouth: *Walbridge v. Ne. Credit Union,* 299 F. Supp. 3d 338, 350 (D.N.H. 2018), discussing *Wheeler v. Native Commerce Studios, LLC*, 2018 WL 447716, at *1–*2 (W.D. Mich. Jan. 17, 2018); *Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-CV-482, 2017 WL 6988193, at *13 (E.D. Tex. Sept. 14, 2017); *Harvey v. Google*, 2015 WL 9268125, at *3–*4 (N.D. Calif. Dec. 21, 2015) (citing and discussing cases); *Abrantes v. Fitness 19 LLC*, 2017 WL 4075576, at *5 (E.D. Calif. Sept. 14, 2017) (citing cases).

6

On the other hand, at least one court has taken the alternative, minority, approach, finding that the one-year time limitation is triggered by each successive transaction. In *Diviacchi v. Affinion Group., Inc*. the court reasoned as follows:

> The language of section 1693m dictates that the time to bring the cause of action is "within one year from the date of the *occurrence* of the *violation.*" 15 U.S.C. § 1693m(g) (emphasis added). Ordinarily, "Federal law incorporates 'the standard rule that' "a statute of limitations begins to run "'when the plaintiff has "a complete and present cause of action." '" *Greenwood ex rel. Estate of Greenwood v. New Hampshire Public Utilities Com'n,* 527 F.3d 8, 14 (1st Cir.2008) (quoting *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. Of Ca., Inc.,* 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997)). As also explained in *Greenwood,* "'A limitations period begins to run when the plaintiff "knows or has reason to know of the injury which is the basis for his claim."' *Id.* (quoting *Rodríguez–García v. Municipality of Caguas,* 354 F.3d 91, 96–97 (1st Cir.2004), quoting *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 41 n. 5 (1st Cir.1990)); *Randall v. Laconia, NH,* 679 F.3d 1, 6 (1st Cir.2012) ("causes of action typically accrue when the aggrieved party suffers his injury").
>
> The plain language of section 1693m supports the application of this standard rule to the statute. Section 1693m gauges the start of the one year time period as when a "violation" occurs and a "violation," as commonly understood under federal common law, takes place when a plaintiff has "'a complete and present cause of action.' "*Wallace v. Kato,* 549 U.S. at 388; *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.,* 522 U.S. at 201.
>
> In fact and in addition to other reasons, the Sixth Circuit relied on this "'standard rule' "in determining the accrual date of the one year limitations period to a section 1693e cause of action. *Wike v. Vertrue, Inc.,* 566 F.3d 590, 593 (6th Cir.2009) ("[a]s a 'standard rule,' the statute of limitations begins to run 'when the plaintiff has a complete and present cause of action' and thus 'can file suit and obtain relief'"). Applying the rule to the section 1693e cause of action, the Sixth Circuit

7

in *Wike* stated that, "A consumer is injured only if, and only when, funds are withdrawn from her account." *Id.* The court therefore held that the statute of limitations period began to run "when the first recurring transfer took place." *Id.*

Under the plain language of section 1693e, a "violation" of section 1693e requires a *"transfer"* that is not preauthorized, which is the violation alleged by plaintiff. Likewise, a consumer is not *injured* until the transfer takes place and the funds are withdrawn from the consumer's account. *Wike v. Vertrue, Inc.,* 566 F.3d at 593. Each recurring transfer causes a new injury in the form of the additional debit to the account.

*Diviacchi v. Affinion Grp., Inc.,* No. CIV.A. 14-10283-IT, 2015 WL 3631605, at *7 (D. Mass. Mar. 11, 2015), *report and recommendation adopted,* No. 14-CV-10283-IT, 2015 WL 3633522 (D. Mass. June 4, 2015). (Footnotes omitted.)

Plaintiff argues that the cases cited by Midsouth for its proposition that the initial unauthorized transfer triggered the one-year time period to the exclusion of subsequent transfers[2] are inapposite, because those cases addressed unauthorized transfers resulting from a preauthorization agreement or event. (Rec. Doc. 10 at 12). The Court is persuaded by Plaintiff's argument, which shows that the seemingly inconsistent opinions among the District Courts are perhaps not so incompatible. In *Diviacchi*, the plaintiff alleged that she did not authorize any of the transfers, either verbally or in writing. As such, the court was addressing unauthorized transfers, as opposed to unauthorized *preauthorized* transfers, though the court considered the

---

[2]    *Walbridge, Wheeler, Whittington, Abrantes, and Harvey, all supra.*

issue in terms of §1693e, because the transfers were supposedly accomplished pursuant to the plaintiff's signature on a membership enrollment card for an insurance program affiliated with the bank. *Id.*, at *2-3.

As the Sixth Circuit recognized in *Wike v. Vertrue, Inc*., a case often cited by district courts interpreting 1693m(g), "unauthorized transfers" are not "preauthorized transfers," though the latter may become unauthorized when certain violations of §1693e occur. *Wike v. Vertrue, Inc.,* 566 F.3d 590, 594–95 (6th Cir.2009). The Court finds this distinction is dispositive of the trigger date for the one-year time period.

Here the Court is faced with *purely unauthorized* transfers, a problem addressed by §1693g, since Plaintiff claims that an unidentified person initiated various transfers from her account without her authorization. Distinguishably, the decisions relied upon by Midsouth adjudicated improper or unauthorized *preauthorized* transfers, which are governed by §1693e.

In the case of purely unauthorized transfers, such as the instant case, the Court finds that the one-year time limitation is triggered by each individual transfer. As explained in *Diviacchi*, relying upon the Sixth Circuit's interpretation in *Wike*, a violation occurs for purposes of §1693m(g) when plaintiff has "a complete and present cause of action," meaning that the injury—the transfer—has occurred. In a case such as this, each unrelated transfer constitutes its own, independent item of

9

damage, rather than transfers which were reoccurring or otherwise linked by a precipitating agreement between the bank and the consumer (i.e. preauthorized), which are properly addressed under §1693e.

Despite limited jurisprudence interpreting the §1693m(g) time limitation in the context of §1693g claims for reimbursement, the Court's recommendation finds support in at least two other opinions: *Peters v. Riggs Nat. Bank, N.A.,* 942 A.2d 1163, 1171–72 (D.C. 2008) (suggesting that a plaintiff has "within one year of the final unauthorized transaction" to bring a claim under §1693g); and *Binns v. BB & T Bank*, 377 F. Supp. 3d 487, at *9 (E.D. Pa. 2019)[3] (suggesting that the plaintiffs could have potentially recovered for unauthorized transactions occurring less than one year prior to the time of suit, but were precluded from recovering for such transactions which occurred more than one year prior to suit). Therefore, the Court finds that Plaintiff is not time-barred from asserting claims for reimbursement under §1693g for transfers which occurred after February 8, 2017, one year prior to her filing of this suit.

### B. <u>Whether the discovery rule saves Plaintiff's otherwise time-barred claims.</u>

---

[3]    This matter has been appealed to the Third Circuit Court of Appeals and is thus subject to reversal. The appeal remains pending at the time of this Report and Recommendation.

Plaintiff next contends, relying upon "the discovery rule," that her claims for unauthorized transactions pre-dating February 8, 2017 are not time-barred, because she did not discover the unauthorized transfers until August 2017. (Rec. Doc. 10 at 12-13). Application of the discovery rule to §1693m(g) is also an unsettled area of law. See *Wike*, at 566 F.3d at 596, wherein the Sixth Circuit declined to consider the issue; and compare *Walbridge v. Ne. Credit Union*, 299 F. Supp. 3d at 351, wherein the District Court of New Hampshire refused to apply the discovery rule to EFTA claims; and *Peters v. Riggs Nat. Bank, N.A.,* 942 A.2d at 1171, wherein the District of Columbia Court of Appeals noted that the discovery rule "could apply" to a claim under §1693(g). Absent instructive precedent, the Court must draw its own conclusion.

Under the discovery rule, "accrual is delayed 'until the plaintiff has 'discovered'' his cause of action." *Gabelli v. S.E.C.,* 568 U.S. 442, 449 (2013), citing *Merck & Co. v. Reynolds,* 559 U.S. 633 (2010). Traditionally, the discovery rule has been applied in the context of fraud cases. *Id*. The Fifth Circuit recognized as much and further expounded upon the discovery rule as follows:

> *Gabelli* noted that it is all-too-common that the discovery rule is confused with fraudulent concealment. It wrote that "[u]nder the discovery rule, the statute of limitations for a particular claim does not accrue until that claim is discovered, or could have been discovered with reasonable diligence, by the plaintiff. As a general matter, this rule does not govern the accrual of most claims because most claims do not involve conduct that is inherently self-concealing. However, since fraud claims by their very nature involve self-concealing conduct, it has

11

been long established that the discovery rule applies where, as here, a claim sounds in fraud." 653 F.3d at 59. "The fraudulent concealment doctrine, by contrast, is an equitable tolling doctrine, not an accrual doctrine. Under the fraudulent concealment doctrine, even when a claim has already accrued, a plaintiff may benefit from equitable tolling in the event that the defendant took specific steps to conceal her activities from the plaintiff." *Id.*

The district court in this case found no conduct concealing fraud. And, to the extent that the SEC argues for the discovery rule's application whenever fraud is alleged, we have rejected an automatic application of a fraud discovery rule into a federal statute when the statute is "explicit in commanding" at what moment a suit must be brought. *See United States v. Borin,* 209 F.2d 145, 147–48 (5th Cir.1954). In rejecting the government's "discovery of fraud" argument in a False Claims Act action, *Borin* reasoned that the "emphatic language must have been employed [by Congress] with full recognition of the fact that in most cases the falsity of the claim would remain concealed for a long time. The intention seems clear that the time would not be extended on account of any fraud or concealment." *Id.* (citations omitted).

*S.E.C. v. Bartek*, 484 F. App'x 949, 955, n. 7 (5th Cir.2012).

Under a similar analysis, §1693m(g) provides only that the one-year time limitation commences "within one year from the date of the occurrence of the violation," without any other language extending the trigger date to the date of discovery. In other words, the statute is "explicit in commanding" that suit be brought within one year of the occurrence, which in this case, is each unauthorized transfer. Contrast e.g. the Fair Credit Reporting Act, 15 U.S.C. §1681, which provides specific discovery language in its time limitation provision, as discussed in *Mack v. Equable Ascent Fin., L.L.C.,* 748 F.3d 663, 665 (5th Cir.2014). Neither is this a case sounding in fraud (at least insofar as the bank is concerned), as historically

contemplated by courts applying the discovery rule. Thus, at first glance, it appears the discovery rule should not be applicable to the EFTA's one-year time limitation, such that Plaintiff cannot recover for unauthorized transfers which occurred prior to February 8, 2017.

However, if the discovery rule were to apply, on the other hand, the Court must consider Plaintiff's allegations in light thereof.

> As a general matter, under the discovery rule "a limitations period begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation." *Mack v. Equable Ascent Fin., L.L.C.,* 748 F.3d 663, 665–66 (5th Cir.2014) (per curiam). The facts relevant to this rule are (1) the existence of an injury and (2) the identity of the person who inflicted it. *Stewart v. Parish of Jefferson,* 951 F.2d 681, 684 (5th Cir.1992)…A claimant need not have actual knowledge of these facts "if the circumstances would lead a reasonable person to investigate further." *Piotrowski v. City of Hous.,* 51 F.3d 512, 516 (5th Cir.1995) (citing *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988) ("Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." (internal quotation marks omitted))). That is, a claimant may be charged with constructive notice of the relevant facts if, in the exercise of due diligence, he *should* have acquired actual knowledge of the latter. *See id.* at 516 n. 12 (citing cases applying this "is or should be aware" standard to the calculation of limitations periods).
>
> *McCune v. U.S. Dep't of Justice*, 592 F. App'x 287, 290–91 (5th Cir. 2014)

Plaintiff alleges that during the time of the unauthorized transfers between December 2016 and August 2017, she and her husband were not receiving statements. Their son told them that the statements were being sent to the Houston

address of their business that had been sold. Plaintiff alleges that she and her husband had no reason to believe that improper activity was occurring in their account. (Rec. Doc. 1-4, at 62, ¶8). In an affidavit submitted with her Opposition to Midsouth's Motion, Plaintiff purports to further explain the ongoing circumstances at the time, including her and Mr. Soileau's health conditions. (Rec. Doc. 10-1). However, the Court is not permitted to consider extraneous evidence attached to an Opposition to a Rule 12(b)(6) motion to dismiss. Plaintiff did request leave of court to amend her Complaint to set forth the facts asserted in her affidavit. (Rec. Doc. 10, at 13).

Assuming the discovery rule would apply to §1693m(g), the Court would be called upon to determine whether there are sufficient facts to establish, at the 12(b)(6) stage, whether Plaintiff's reliance upon her son's statements regarding the bank statements having been sent to an old address constitutes due diligence as required by the discovery rule. Therefore, the Court finds that Plaintiff should be permitted the opportunity to amend her Complaint to assert facts which bear on the due diligence determination, including those facts set forth in her affidavit.

### C. **Whether Plaintiff timely notified Midsouth of the unauthorized transfers.**

Midsouth next moves to dismiss Plaintiff's EFTA claims on the grounds that Plaintiff and Mr. Soileau failed to timely notify the bank of the unauthorized transfers as required by §1693g(a), which provides:

14

> [R]eimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer[.]

Plaintiff does not appear to contest that she and Mr. Soileau did not comply with the sixty-day notice requirement; however, she maintains that the exception for extenuating circumstances in §1693g(a), which specifically identifies hospitalization as an acceptable extenuating circumstance, applies. In support of her position, Plaintiff attached her affidavit detailing her and Mr. Soileau's poor health, including hospitalization. Since the Court is not permitted in this instance to consider evidence beyond the pleadings, the Court finds that Plaintiff should be granted the opportunity to amend her Petition to include the factual allegations set forth in her affidavit. Accordingly, the Court finds that Midsouth's Motion to Dismiss should be denied without prejudice, and that they should be afforded an opportunity to re-file the motion, if necessary, after Plaintiff has amended the Complaint.

### III.    **Whether Plaintiff's Louisiana state law claims are preempted by the EFTA.**

Midsouth next argues that Plaintiff's claims under Louisiana law are governed solely by the Louisiana Uniform Commercial Code, and specifically La. R.S. 10:4-406, to the exclusion of other state law claims, such as conversion and negligence. Plaintiff responded that her claims arising out of the unauthorized transfers are not

covered under that statute, but instead are covered under the EFTA. In other words, Midsouth contends that Plaintiff's exclusive state law remedy is under the Louisiana UCC and that she has not stated a claim for such, while Plaintiff contends that her only asserted state law claims are for conversion and negligence, which are not preempted by the EFTA.

The Fifth Circuit has recognized that the EFTA does not preempt all state law claims:

> The clear language of the EFTA indicates that Congress did not intend for the Act to provide the exclusive cause of action for claims relating to unauthorized electronic fund transfers. The Act contemplates the application of state law that is not preempted by its provisions. It does not *completely* preempt claims relating to electronic fund transfers[.]

*Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 553 (5th Cir. 2008).

Midsouth asserts that "Louisiana has provided Plaintiffs with their only avenue of recovery for the payment of unauthorized electronic transfers" (Rec. Doc. 8-1, at 18), and that "[u]nder Louisiana law Plaintiffs' only cause of action against Bank for unauthorized electronic transfers lies exclusively in the Louisiana UCC…and not in negligence or conversion." (Rec. Doc. 8-1, at 19). Here, the Court is faced with yet another question of unsettled law.

Relying upon *Bernhard*, *supra*, the court in *Dorsey v. U.S. Bank* held that the EFTA did not preempt the plaintiff's Civil Code state law claims for conversion and negligence. *Dorsey v. U.S. Bank Nat'l Ass'n*, No. 11-CV-231-JJB, 2012 WL

16

13001917, at *8 (M.D. La. Apr. 2, 2012). Somewhat contrary to *Dorsey*, Louisiana authority exists supporting Midsouth's position that the Louisiana UCC precludes non-UCC based claims like conversion and negligence. In *ASP Enterprises, Inc. v. Guillory*, the court held: "[C]laims for conversion and negligence grounded in general Louisiana law outside the ambit of the UCC are displaced by the UCC." *ASP Enterprises, Inc. v. Guillory*, 2008-2235 (La. App. 1 Cir. 9/11/09), 22 So. 3d 964, 973, *writ denied*, 2009-2464 (La. 1/29/10), 25 So. 3d 834. However, the court in *ASP* explicitly limited its holding to the context of third-party checks. *Id*. Subsequent cases relying on *ASP* adjudicated claims arising out of forged checks or similar instruments. *Jones v. Americas Ins. Co.*, 2016-0904 (La. App. 1 Cir. 8/16/17), 226 So.3d 537, 543 (citing cases). The Court in *Ducote v. Whitney*, upon which Midsouth relies, extended the holding of *ASP* to fraudulently-obtained credit cards. *Ducote v. Whitney Nat'l Bank*, 16-574 (La. App. 5 Cir. 2/22/17), 212 So.3d 729, 736, *writ denied*, 2017-0522 (La. 5/26/17), 221 So.3d 860.

Plaintiff urges the Court to distinguish her claims arising out of electronic transfers from those involving forged instruments. The Court agrees that this is a distinction of substance. The Louisiana jurisprudence upon which Midsouth relies concerned matters arising under Chapter 3 (Negotiable Instruments) and/or Chapter 4 (Bank Deposits and Collections) of the Louisiana UCC. Plaintiff's claims arise out

of unauthorized electronic transfers, governed by Chapter 4A (Funds Transfer). Indeed, the Louisiana UCC specifically provides:

> Except as provided in Subsection (b) of this Section,[4] this Chapter does not apply to a funds transfer any part of which is governed by the Electronic Fund Transfer Act.

> La. Stat. Ann. § 10:4A-108.

Hence, the EFTA directly supplants the Louisiana UCC in this case, begging the question of whether the EFTA supplants (i.e. preempts) Louisiana general tort claims. This distinction draws this case in line with the decision in *Dorsey*, *supra*, which held that the EFTA does not preclude general claims of conversion and negligence. There, the court reasoned, "It is clear from EFTA's text that Congress did not necessarily intend to preempt state laws unrelated to EFTs, such as negligence or breach of contract, unless the state law is *inconsistent with* EFTA." 2012 WL 13001917, at *7. The court went on to find that Louisiana claims for conversion and negligence, as species of Louisiana common laws and generally unrelated to electronic funds transfers, were not inconsistent with EFTA. *Id.*, at *8, citing *Stegall v. Peoples Bank of Cuba*, 270 S.W.3d 500, 506 (Mo. App. S.D. 2008). This Court agrees. As such, Plaintiff is not precluded from also asserting claims for conversion and negligence.

---

[4]     Subsection (b) pertains to remittance transfers as defined in the EFTA, §1693o, which is not at issue in this case.

18

## IV.    Plaintiff's State Law Claims.

Having determined that Plaintiff is not precluded from asserting Louisiana claims for conversion and negligence, the Court next considers whether Plaintiff has stated claims for such under Rule 12(b)(6).

### A. Timeliness of Plaintiff's State Law Claims.

Midsouth first moves to dismiss Plaintiff's state law claims for conversion and negligence as untimely. Conversion is a delictual action subject to Louisiana's one-year prescriptive period applicable to tort claims. La. C.C. art. 3492; *Costello v. Citibank (S. Dakota), N.A.,* 45,518 (La. App. 2 Cir. 9/29/10), 48 So. 3d 1108, 1112. Plaintiff filed suit on February 8, 2018. (Rec. Doc. 1-2, at 3). Accordingly, her state law claims for conversion and negligence arising out of transfers which occurred prior to February 8, 2017 are facially prescribed.

With regard to her claims for unauthorized transfers which occurred between December 2016 and February 8, 2017, Plaintiff asserts the doctrine of *contra non valentem*, explained by the Louisiana Supreme Court as follows:

> Although La. C.C. art. 3467 provides that "prescription runs against all persons unless exception is established by legislation," this Court has applied the jurisprudential doctrine of *contra non valentem* as an exception to this statutory rule. *See e.g., Wimberly v. Gatch,* 93–2361 (La.4/11/94), 635 So.2d 206, 211. The doctrine of contra non valentem applies as an exception to the statutory prescriptive period where in fact

and for good cause a plaintiff is unable to exercise his cause of action when it accrues. The Court has recognized four instances where *contra non valentem* can apply: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's actions; (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; or (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Wimberly, supra* at 211. However, the doctrine of *contra non valentem* only applies in "exceptional circumstances." La. C.C. art. 3467, Official Revision Comment (d); *State Through Div. of Admin. v. McInnis Bros. Const.,* 97–0742 (La.10/21/97), 701 So.2d 937, 940; *Renfroe v. State ex rel. Dept. of Transp. and Development,* 01–1646 (La.2/26/02), 809 So.2d 947, 953.

*Specialized Loan Servicing, LLC v. January,* 2012-2668 (La. 6/28/13), 119 So. 3d 582, 585.

With regard to the fourth instance above, upon which Plaintiff relies, the Louisiana Supreme Court has clarified that "'[t]his principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned.'" *Marin v. Exxon Mobil Corp*., 2009-2368 (La. 10/19/10), 48 So. 3d 234, 245–4, quoting *Renfroe v. State ex rel. Dept. of Transp. and Development,* 01–1646 (La.2/26/02), 809 So.2d 947, 953. "According to *Marin,* 'the ultimate issue in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of

the defendant's conduct.'" *Wells v. Zadeck*, 2011-1232 (La. 3/30/12), 89 So. 3d 1145, 1151, quoting *Marin, supra.*

Plaintiff claims that she and her late husband did not become aware of the unauthorized transfers until August 2017 and that she filed suit within one year thereof. (Rec. Doc. 10 at 20). While these allegations must be accepted as true for purposes of a Rule 12(b)(6) motion, given that it is recommended that Plaintiff should be granted an opportunity to amend her Complaint to set forth facts bearing on the issue of due diligence for the discovery rule analysis, it is also recommended she be allowed to set forth facts pertaining to exceptional circumstances contemplated by the doctrine of *contra non valentem.* Thus, the Court recommends that Midsouth's Motion to Dismiss be denied without prejudice to its right to re-urge the motion upon Plaintiff's filing of an amended complaint.

### B. <u>Whether Plaintiff has stated a claim for conversion under Louisiana state law.</u>

The Louisiana Supreme Court has directed that "[a] conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel." *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 98-0343 (La. 12/1/98),

721 So. 2d 853, 857. In order to prevail on a conversion claim, the plaintiff must prove the following: (1) that she owned the funds allegedly misused by the defendant; (2) that the misuse was inconsistent with the plaintiff's rights of ownership and (3) the misuse constituted a wrongful taking of the funds. *Zaveri v. Condor Petroleum Corp.,* 27 F. Supp. 3d 695, 708 (W.D. La. 2014), citing *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.,* 783 F.2d 480, 484 (5th Cir.1986).

The court considered similar facts in *Dorsey v. U.S. Bank*, in which the plaintiff alleged that a hacker fraudulently withdrew money from his account at US Bank by opening an unauthorized PayPal account.[5] In finding that the plaintiff had not stated a sufficient claim for conversion, the court reasoned as follows:

> U.S. Bank can still be liable for conversion if the Bank transferred possession of plaintiff's goods *without authority. Chrysler Credit*, 783 F.2d at 484. …[However], the transfers by U.S. Bank [to the fraudulently opened PayPal account] do not amount to a wrongful taking, unless the Bank had reason to know that Plaintiff did not authorize the transfer. To the extent unauthorized transfers occurred before Plaintiff's notification to U.S. Bank, the Bank's exertion of authority does not amount to a wrongful taking for purposes of conversion. Plaintiff contends that he told U.S. Bank of the unauthorized transfers, and the Bank responded by promising to freeze his account. Therefore, if Plaintiff can demonstrate that U.S. Bank allowed the unauthorized transfers to continue after the date of Plaintiff's notification, Plaintiff can make a plausible case against U.S.

---

[5]    PayPal is described in Dorsey as "an online payment service that allows a business or private individual to send and receive payments via the Internet.... A PayPal account holder sends money by informing PayPal of the intended recipient's e-mail address and the amount to be sent and by designating a funding source such as a credit card, bank account or separate PayPal account." *Dorsey*, 2012 WL 13001917, at *4.

Bank for wrongful conversion of his funds. Nevertheless, because Plaintiff failed to allege facts concerning the date of his notification, the Court grants U.S. Bank's motion to dismiss Plaintiff's conversion claim, and Plaintiff is granted leave to amend in order to clarify the timeline applicable here.

*Dorsey,* 2012 WL 13001917, at *9.

The Court agrees with Midsouth that Plaintiff did not allege facts to show that Midsouth took Plaintiff's funds or initiated the unauthorized transfers; however, Midsouth may still be liable for conversion if it nevertheless allowed Plaintiff's funds to be transferred after being advised of the unauthorized activity. Plaintiff alleges that she and her late husband notified Midsouth in August 2017 of the improper transfers, and at that time they closed the account and opened a second account. (Rec. Doc. 1-4, at 62, ¶9). Plaintiff alleges that "within weeks unauthorized access to this account was obtained and numerous electronic transfer and payments were again made by MidSouth without notice to, or authority from, Petitioner or her late husband." (Rec. Doc. 1-4, at 62, ¶10). Plaintiff did not clearly allege if or when she notified Midsouth about the improper transfers from the second account, or if Midsouth allowed any transfers to occur after being notified of the improper activity. Therefore, the Court recommends that Plaintiff should be given the opportunity to amend to clarify the applicable timeline, such that Midsouth's Motion to Dismiss should be denied without prejudice insofar as it seeks dismissal of Plaintiff's conversion claim.

C. **Whether Plaintiff has stated a claim for negligence under Louisiana state law.**

The plaintiff in a Louisiana negligence action must prove: (1) existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) the risk of harm to plaintiff was within the scope of protection afforded by the duty; (4) defendant's breach was the cause-in-fact of the harm suffered by plaintiff; and (5) plaintiff was damaged. *Hanks v. Entergy Corp.*, 944 So.2d 564, 579 (La. 2006).

The duty owed by a bank to its customer is set forth in La. R.S. 9:1124:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.

La. C.C. art. 2315, the basis for tort liability in Louisiana, "was utilized prior to the 1991 enactment of La.Rev.Stat. 6:1124 by Louisiana courts to 'impose tort liability against banks that have *violated clear fiduciary duties* to their customers[.]" *Guidry v. Bank of LaPlace*, 94-1758 (La. App. 4 Cir. 9/15/95), 661 So. 2d 1052,

1056, *writ denied,* 95-2498 (La. 1/5/96), 666 So. 2d 295, and *writ denied*, 95-2490

(La. 1/5/96), 666 So. 2d 295, and *writ denied,* 95-2477 (La. 1/5/96), 666 So. 2d 296.

"[I]n order to find the banks liable under Article 2315, the jury must first find that

the banks owed a fiduciary duty to [the customer]." *Id.*

> In Louisiana, it is clear that a financial institution only owes to a
> borrower the duty of complying with the contract between the
> institution and the borrower. However, no fiduciary duty of loyalty
> exists between the financial institution and the borrower. "[U]nless
> expressly set forth in a written agency or trust agreement, no fiduciary
> responsibilities of a financial institution arise toward customers or third
> parties."
>
> *Landreneau v. Fleet Fin. Grp*., 197 F. Supp. 2d 551, 557 (M.D. La.
> 2002), quoting *Ultra Fabricators, Inc. v. M C Bank and Trust Co.*, 724
> So.2d 210, 214 (La.App. 1st Cir.1997), *writ denied,* 98–2682
> (La.12/18/98), 732 So.2d 1238.

Beyond the foregoing, inherent in the EFTA (and the Louisiana UCC, in

applicable cases) is the bank's duty to reimburse its customers for unauthorized

transfers (subject to certain conditions, such as timely notice), and to not allow

further unauthorized transfers (after having been properly notified) to occur.

Plaintiff alleges generally that Midsouth breached the duty to protect her

money by allowing the unauthorized transfers to occur and by failing to supervise or

protect the account, resulting in the loss of substantial funds. (Rec. Doc. 1-4, at 63,

¶22-25). Plaintiff did not allege any specific facts regarding her and Mr. Soileau's

agreement with Midsouth or how Midsouth breached any such agreement.

Nonetheless, Plaintiff did allege that after notifying Midsouth of the unauthorized

transfers from the first account, Midsouth allowed unauthorized transfers to occur from a second account. Presumably Plaintiff's agreement with Midsouth addresses how the bank should handle such situations, as well as procedures and protocols for confirming a customer's authority; however, the Petition does not so allege. Thus, the Court finds that Plaintiff has not stated a claim for negligence insofar as the Petition fails to set forth facts relating to her agreement with Midsouth and whether Midsouth failed to follow any protocol regarding transfers. Plaintiff should be permitted an opportunity to amend the Petition to set forth facts in support of her negligence claim.

## <u>Conclusion</u>

For the reasons discussed herein, it is recommended that Midsouth's Motion to Dismiss be DENIED insofar as it seeks to dismiss Plaintiff's EFTA claims for transfers which occurred after February 8, 2017; and DENIED WITHOUT PREJUDICE to re-assert its motion in all other respects. It is further recommended that Plaintiff be given an opportunity to amend her Petition as discussed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 19th day of July, 2019.

_____

PATRICK J. HANNA