IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| BERNADINE D. SOILEAU, INDIVIDUALLY AND IN HER CAPACITY AS EXECUTRIX OF THE ESTATE OF JOHN L. SOILEAU, SR. | * * * * | CIVIL ACTION NO. 6:19-cv-00537 |
| VERSUS | * * * | JUDGE MICHAEL J. JUNEAU |
| MIDSOUTH BANCORP, INC. | * * | MAGISTRATE PATRICK J. HANNA |

*************************************************************************

## BERNADINE D. SOILEAU'S FOURTH
## AMENDED AND RESTATED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Bernadine D. Soileau ("Bernadine"), individually, and in her capacity as executrix of the estate of her deceased husband, John L. Soileau, Sr. ("John"), who respectfully represents:

1. Bernadine is a resident of the full age of majority of St. Landry Parish. Made additional plaintiff party is the estate of Petitioner's deceased husband, John, who died having been domiciled in St. Landry Parish at the time of his death. John's Last Will and Testament has been probated and appointed Bernadine as the executrix of his estate.

2. Made defendant herein is MidSouth Bank, National Association, a Louisiana bank, whose registered office is located in Lafayette Parish ("MidSouth").

3. This case is a civil action over which this Court has jurisdiction under 28 U.S.C. § 1331.

### Background

4. Petitioner, Bernadine, and her late husband, John, opened checking account number 2309734 at MidSouth.

5. Beginning in December 2016, unauthorized access to the checking account was made available by Defendant without the knowledge, consent, or prior authorization of Bernadine or John.

6. As of December 14, 2016, just before the unauthorized electronic fund transfers began to occur, Bernadine and John's checking account with Defendant had a balance of nearly $1.2 million.

7. By August 11, 2017, Bernadine and John's checking account with Defendant had a balance of less than $20,000.

8. From December 2016 and continuing through August 2017, numerous unauthorized electronic fund transfers and payments were made from the checking account by Defendant without the knowledge, consent, or approval of Bernadine or John.

9. Defendant allowed this activity to occur without taking any steps to either notify Bernadine or John or obtain authority for the unauthorized electronic fund transfers.

10. From December 2016 through August 2017, bank statements were not being received by Bernadine nor John. When Bernadine and John asked about the statements, they were told that the statements were being sent to the Houston address of their business that had recently been sold. Bernadine and John had no reason to believe that any improper activity was occurring in their checking account.

11. Bernadine was born on June 28, 1938, making her over 78 years old at the time the unauthorized electronic fund transfers at issue started to occur. John was born on August 5, 1936, making him over 80 years old at the time the unauthorized electronic fund transfers at issue started to occur. During the period of December 2016 through August 2017, Bernadine and John were in

poor health, and each was hospitalized at least once. At other times they were bedridden due to their poor health.

12. During the time period of December 2016 through August 2017, due to their poor health and reduced mental capacity, Bernadine and John were forced to rely on family members and hired staff to assist with their day-to-day affairs, including such things as cooking, cleaning, driving, running errands, grocery shopping, retrieval and sorting of their mail and payment of their household bills.

13. During the time period of December 2016 through December 2017, much of Bernadine's time was spent, along with caregivers, taking care of John while his health continued to deteriorate.

14. John died at home in December 2017 as a result of his failing health.

15. The combination of Bernadine and John's advanced age, poor health, limited mobility, diminished mental capacity, often confinement to either bed or a medical facility, reliance on family members and hired staff to help with their day-to-day affairs, concern and preoccupation with the well-being of the other, not receiving their checking account statements, and being advised that their checking account statements were being sent to the address of the family's old business in Houston, were exceptional and extenuating circumstances that contributed to, and resulted in, Bernadine and John not discovering the unauthorized electronic fund transfers at issue in this matter until August 2017.

16. These circumstances served to extend the time period it took Bernadine and John to discover, report and file the claims and allegations asserted herein.

17. In August 2017, Bernadine and John learned, for the first time, of the unauthorized electronic transfers within their checking account and immediately brought them to MidSouth's

[2501.00001/380260/8]

attention. Bernadine and John had the checking account closed and opened a new checking account with Defendant, numbered 3880567, into which Bernadine and John deposited the remaining funds.

18. On or about August 7, 2017, Bernadine and John met with MidSouth (the "August 7, 2017 Meeting"), wherein Bernadine, John, and a MidSouth representative went over all transfers from Bernadine and John's checking account with Defendant that had occurred over the previous 90 days.

19. At the August 7, 2017 Meeting, Bernadine and John identified and advised Defendant of unauthorized electronic fund transfers from their checking account.

20. Upon information and belief, after learning at the August 7, 2017 Meeting of the unauthorized electronic fund transfers, MidSouth did not investigate the unauthorized electronic fund transfers nor did it make any determination as to whether or not an error had occurred as reported by Bernadine and John.

21. On or about August 11, 2017, Bernadine and John had a follow-up meeting with Defendant (the "August 11, 2017 Meeting") to further address the unauthorized electronic fund transfers.

22. At the August 11, 2017 Meeting, Bernadine, John and a MidSouth representative looked at earlier unauthorized transfers and delved deeper into the specifics of the electronic fund transfers from the checking account and discovered additional unauthorized electronic fund transfers.

23. At the August 11, 2017 Meeting, upon discovering the additional unauthorized electronic fund transfers, Defendant recommended that Bernadine and John close their checking account with Defendant and report the unauthorized electronic fund transfers to the police.

24. Despite recommending that Bernadine and John close their checking account with MidSouth and report the unauthorized electronic fund transfers to the police, MidSouth still did not investigate the unauthorized electronic fund transfers nor reimburse Bernadine and John for any of same.

25. Bernadine and John would not have taken the recommendation of MidSouth, closed their checking account with MidSouth and reported and turned over to the police all of their banking records reflecting the unauthorized electronic fund transfers at issue, had they not been interested in recovering the unauthorized electronic fund transfers.

26. Upon knowledge, information and belief, despite the aforementioned meetings and the opening of a brand-new checking account, within weeks unauthorized access to this checking account was obtained and numerous unauthorized electronic fund transfers and payments were again made by MidSouth without notice to, or authority from, Bernadine or John.

27. MidSouth allowed all of the aforementioned unauthorized electronic fund transfers to occur without the knowledge or approval of Bernadine or John, and Bernadine and John were deprived of these funds.

28. The actions or inactions by Midsouth have brought undeserved and unnecessary stress and frustration to Bernadine and to John prior to his death, ruining their personal financial situation.

29. The full extent of the unauthorized acts is still being determined.

30. For each of the counts below, Petitioner incorporates all of the foregoing allegations.

## Count 1
## Violation of the Electronic Funds Transfer Act

31. MidSouth electronically transferred funds that were not authorized by Bernadine or John.

32. Bernadine and John received no benefit from the unauthorized electronic transfers made by Defendant.

33. MidSouth violated the rights of Bernadine and John under the Electronic Funds Transfer Act ("EFTA") by allowing the transfer of funds from their checking account without their knowledge, consent, or prior authorization, causing damage to them.

34. Bernadine and John's MidSouth checking account statement (the "June 2017 Statement") for period 5/16/2017 through 6/14/2017 was issued on June 14, 2017.

35. The June 2017 Statement contained over $129,000.00 in unauthorized electronic fund transfers.

36. At the August 7, 2017 Meeting and the August 11, 2017 Meeting, both within 60 days of the issuance of the June 2017 Statement, Bernadine and John timely reported to Defendant those unauthorized electronic fund transfers contained within the June 2017 Statement.

37. Bernadine and John's MidSouth checking account statement (the "July 2017 Statement") for the period 6/15/2017 through 7/16/2017 was issued on July 14, 2017.

38. The July 2017 Statement contained over $163,000.00 in unauthorized electronic fund transfers.

39. At the August 7, 2017 Meeting and the August 11, 2017 Meeting, both within 60 days of the issuance of the July 2017 Statement, Bernadine and John timely reported to MidSouth those unauthorized electronic fund transfers contained within the July 2017 Statement.

40. Bernadine and John's MidSouth checking account statement (the "August 2017 Statement") for the period 7/17/2017 through 8/14/2017 was issued on August 14, 2017.

41. While Bernadine and John's August 2017 Statement was not issued until August 14, 2017, Bernadine and John discussed with MidSouth at the August 7, 2017 Meeting all unauthorized electronic fund transfers that had occurred in the 90 days prior to that meeting.

42. While Bernadine and John's MidSouth August 2017 Statement was not issued until August 14, 2017, Bernadine and John discussed with Defendant at the August 11, 2017 Meeting all unauthorized electronic fund transfers that had occurred prior to that meeting.

43. From July 17, 2017 through August 10, 2017, the unauthorized electronic fund transfers from Bernadine and John's checking account totaled over $175,000.00.

44. At the August 7, 2017 Meeting and August 11, 2017 Meeting, within 60 days of the unauthorized electronic fund transfers referenced in the previous paragraph, Bernadine and John timely reported to MidSouth those unauthorized electronic fund transfers occurring between July 17, 2017 and August 10, 2017.

### Count 2
### Negligence

45. Defendant had a duty to Bernadine and John to prevent any losses resulting from the unauthorized use of their checking account.

46. At the August 7, 2017 Meeting, Bernadine and John identified and advised MidSouth of unauthorized electronic fund transfers from their checking account.

47. Upon information and belief, after learning at the August 7, 2017 Meeting of the unauthorized electronic fund transfers, MidSouth did not investigate the unauthorized electronic fund transfers nor did it make any determination as to whether or not an error had occurred as reported by Bernadine and John.

48. Defendant's failure to investigate Bernadine and John's allegations and reimburse them for funds lost violated the terms and conditions of the deposit account agreement by and between Bernadine and John and MidSouth (the "Account Agreement") attached as Exhibit A.

49. The Account Agreement refers the account holder to a 5-page "Electronic Fund Transfers" disclosure document (the "EFT Disclosure") attached as Exhibit B.

50. In the EFT Disclosure, under the section entitled "Error Resolution Notice," MidSouth agreed that after it receives a complaint from an account holder of unauthorized electronic fund transfers, it "will determine whether an error occurred within 10 business days…and will correct any error promptly."

51. The EFT Disclosure further provides that MidSouth may ask the account holder to put his/her/its complaint in writing within 10 business days. MidSouth never requested that the complaint be put in writing.

52. The EFT Disclosure does not provide that MidSouth will not investigate or reimburse the account holder's claim if the account holder fails or refuses to submit his/her/its complaint in writing within 10 business days.

53. MidSouth did not request that Bernadine and John submit their complaint in writing within 10 business days of the August 7, 2017 Meeting or within 10 business days of the August 11, 2017 Meeting.

54. The EFT Disclosure further provides that if MidSouth needs additional time to investigate the account holder's claim, it can take up to 45 days to complete its investigation. If MidSouth elects to take said additional time for an investigation, it agrees to credit the account holder's checking account within 10 business days and in the amount the account holder thinks is in error.

55. The EFT Disclosure further provides that if MidSouth requests that the account holder's complaint be reduced to writing, and that writing is not received within 10 business days of said request, then MidSouth may not credit the account as mentioned in the previous paragraph.

56. MidSouth had a duty to Bernadine and John under the Account Agreement and the incorporated EFT Disclosure to investigate the alleged unauthorized electronic fund transfers, make a timely determination if an error had occurred as alleged, and if so determined, promptly reimburse Bernadine and John for the unauthorized electronic fund transfers at issue.

57. MidSouth breached its duty to Bernadine and John by not investigating the claims, not making a determination (either way) that an error had in fact occurred, and by not promptly reimbursing Bernadine and John for the unauthorized electronic fund transfers at issue.

58. MidSouth's breach of its duty resulted in Bernadine and John's loss of over $1 million.

59. Following the August 11, 2017 meeting, MidSouth again had a duty to Bernadine and John under the Account Agreement and incorporated EFT Disclosure to investigate the unauthorized electronic fund transfers, make a timely determination if an error had occurred, and if so determined, promptly reimburse Bernadine and John for those unauthorized transfers.

60. Following the August 11, 2017 Meeting, MidSouth again breached its duty to Bernadine and John by not investigating the claims of unauthorized electronic fund transfers, not making a determination (either way) that an error occurred, and by not promptly reimbursing Bernadine and John for the unauthorized electronic fund transfers.

61. MidSouth's continued breach of its duty resulted in damages to Bernadine and John.

## Damages

62. Each of the foregoing claims and the other facts pleaded herein have resulted in the following damages:

   a. loss of misappropriated or converted assets and funds;

   b. investigation costs;

   c. mental anguish;

   d. emotional distress;

   e. inconvenience;

   f. attorneys' fees;

   g. all other damages pled herein; and

   h. such other damages, losses, and injuries of such nature and such amounts as may be proven at trial.

## Prayer for Relief

WHEREFORE, Petitioner, Bernadine D. Soileau, individually and in her capacity as the executrix of the estate of John L. Soileau, Sr., prays that after due proceedings had, there be judgment in favor of Petitioner and the estate of John L. Soileau, Sr., and against MidSouth for the following:

   a. loss of funds improperly transferred or converted;

   b. investigation costs;

   c. mental anguish;

   d. emotional distress;

   e. inconvenience;

   f. attorneys' fees allowed by law;

g. all other damages and losses pleaded herein;

h. interest from the improper transfer and taking of Petitioner's funds; and

i. such other damages, losses, and injuries of such nature and such amounts as may be proven at trial.

Respectfully submitted:

PERRET DOISE L.L.C.

*s/Henry C. Perret, Jr.*
Henry C. Perret, Jr., Bar No. 10514
Jacob E. Favaron, Bar No. 33468
1301 Camellia Blvd., Ste. 400 (70508)
P. O. Box 53789
Lafayette, LA 70505
Telephone: 337-593-4900
Fax: 337-593-4910
hperret@perretlaw.com
jfavaron@perretlaw.com
**ATTORNEYS FOR BERNADINE D. SOILEAU, INDIVUDUALLY AND IN HER CAPACITY AS EXECUTRIX OF THE ESTATE OF JOHN L. SOILEAU, SR.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record, on November 18, 2019, who are deemed to have consented to electronic service via the Court's CM/ECF system.

I also certify that I have mailed by United States Postal Service this filing to the following non-CM/ECF participants: N/A

*s/Henry C. Perret, Jr.*
HENRY C. PERRET, JR.

[2501.00001/380260/8]