# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**BERNADINE D SOILEAU**                **CASE NO.  6:19-CV-00537**

**VERSUS**                              **JUDGE JUNEAU**

**MIDSOUTH BANCORP INC ET AL**   **MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss Plaintiff's Amended Complaint pursuant to F.R.C.P. Rule 12(b)(6) filed on behalf of Midsouth Bank, N.A. (Rec. Doc. 25). Plaintiff, Bernadine D. Soileau, opposes the Motion (Rec. Doc. 29). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that Midsouth's Motion be DENIED.

## Factual Background

Plaintiff, Bernadine Soileau, individually and in her capacity as executrix of the estate of her late husband, John Soileau, filed this lawsuit after an unidentified individual nearly depleted their checking account at Midsouth Bank. Midsouth initially moved to dismiss pursuant to F.R.C.P. Rule 12(b)(6) Plaintiff's Third Amended Complaint on the grounds that Plaintiff had failed to state claims under

the Electronic Funds Transfer Act (EFTA) or claims for conversion or negligence under Louisiana law. The Court denied Midsouth's Motion in part and permitted Plaintiff to amend the Complaint to state additional facts. (Rec. Doc. 14, adopted at Rec. Doc. 22). Plaintiff then filed the Fourth Amended Complaint, which Midsouth has moved to dismiss.

According to Plaintiff's Fourth Amended Complaint, Mr. and Mrs. Soileau had a checking account at Midsouth, with a balance of nearly $1.2 million prior to December 14, 2016. (Rec. Doc. 24, ¶4-6). By August 11, 2017, the balance had been depleted to less than $20,000 due to numerous unauthorized electronic fund transfers. (Rec. Doc. 24, ¶7-8). Plaintiff alleged that Midsouth allowed the unauthorized transfers and payments to occur without her or her husband's knowledge, consent, or approval. (*Id.*)

Plaintiff alleged that neither she nor Mr. Soileau received any bank statements from December 2016 through August 2017. An individual not identified in the Complaint told them that the statements had been sent to an old business address in Houston. Mr. and Mrs. Soileau had no reason to believe any improper activity had been occurring in their checking account. (Rec. Doc. 24, ¶10).

Plaintiff alleged that she was over 78 years old and that Mr. Soileau was over 80 years old at the time of the unauthorized transfers. (Rec. Doc. 24, ¶11). From December 2016 through August 2017, due to poor health and reduced mental

capacity, they were forced to rely on family members and hired staff for assistance with daily affairs. (Rec. Doc. 24, ¶12). Mr. Soileau's health continued to deteriorate during that time, and he died in December 2017. (Rec. Doc. 24, ¶13-14).

Plaintiff learned of the unauthorized transfers in August 2017 and immediately brought them to Midsouth's attention. (Rec. Doc. 24, ¶17). She and Mr. Soileau closed the account and opened a second account, into which the remaining funds were deposited. (Rec. Doc. 24, ¶17). They met with Midsouth on August 7, 2017 to review the transfers over the previous 90 days, and at that time, they identified the unauthorized transfers. (Rec. Doc. 24, ¶18-19). Plaintiff alleged that Midsouth did not investigate the unauthorized transfers after the meeting. (Rec. Doc. 24, ¶20).

They had a second meeting on August 11, 2017 with Midsouth, at which time additional unauthorized transfers were identified, and the Midsouth representative advised that they close the account and report the unauthorized transfers to the police. (Rec. Doc. 24, ¶21-23). Plaintiff alleged that Midsouth did not investigate the unauthorized transfers after the second meeting. (Rec. Doc. 24, ¶24). Within weeks of the second meeting and the opening of a second account, numerous unauthorized transfers occurred from the second account. (Rec. Doc. 24, ¶26).

Based on the foregoing alleged facts, Plaintiff asserted Count 1 for Violation of EFTA, and specifically identified three statements (June, July, and August 2017)

3

reflecting a total of over $467,000 of unauthorized transfers, which preceded or coincided with Plaintiff's meetings with Midsouth regarding the unauthorized transfers. (Rec. Doc. 24, ¶31-44). Plaintiff asserted Count 2 for Negligence based upon Midsouth's alleged failure to investigate the unauthorized transfers, which Plaintiff alleges was in violation of their Account Agreement and Electronic Fund Transfers disclosure document, both of which were attached as exhibits to the Complaint. (Rec. Doc. 24, ¶45-61; Rec. Doc. 24-1; 24-2). Midsouth seeks to dismiss the Fourth Amended Complaint, arguing that Plaintiff's EFTA claims are untimely and that Plaintiff failed to state a claim for negligence under Louisiana law. (Rec. Doc. 25).

## **Applicable Law**

### I. **Law applicable to Rule 12(b)(6) Motions to Dismiss.**

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid*

*Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from

5

conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556). See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir.2008).

## II. Whether Plaintiff's EFTA claims are timely.

The purpose of the EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," and its "primary objective…is the provision of individual consumer rights." 15 U.S.C. §1693(b). As previously held, the Court finds §1693g of the EFTA is the pertinent provision in this case. Under that section, a financial institution need not reimburse "the consumer for losses the financial

institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer." 15 U.S.C. §1693g. In simpler terms, a financial institution is obligated to reimburse a consumer for unauthorized electronic transfers about which it is timely notified.

A consumer's claim for reimbursement (or any other claim for EFTA violations) must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. §1693m(g). Following an in-depth analysis of the foregoing time limitation, this Court previously held that, in the case of purely unauthorized transfers, such as the instant case, the one-year time limitation is triggered by each individual transfer. (See discussion at Rec. Doc. 14, p. 6-10, adopted by Rec. Doc. 22). Therefore, the Court found that Plaintiff is not time-barred from asserting claims for reimbursement under §1693g for transfers which occurred after February 8, 2017, one year prior to her filing of this suit.

Plaintiff maintains that the discovery rule applies to save her claims for reimbursement of pre-February 8, 2017 transfers. Midsouth argues that the discovery rule does not apply to §1693m(g), thereby rendering pre-February 8, 2017 claims untimely. (Rec. Doc. 25-1, p. 12-17). The Court previously concluded that the

discovery rule should not be applicable to the EFTA's one-year time limitation, such that Plaintiff cannot recover for unauthorized transfers which occurred prior to February 8, 2017. (See discussion at Rec. Doc. 14, p. 11-13, adopted by Rec. Doc. 22). The Court went on to analyze application of the discovery rule to the facts alleged, assuming for purposes of the District Court's consideration that the discovery rule would apply. (Rec. Doc. 14, p. 13-14). The District Court has since adopted this Court's ruling, thereby implicitly holding that the discovery rule does not apply to the time limitation of §1693m(g). (Rec. Doc. 22 adopting Rec. Doc. 14). Thus, as detailed in the Court's previous Report and Recommendation, the Court finds that the discovery rule does not save Plaintiff's EFTA claims for unauthorized transfers which occurred prior to February 8, 2017.

Plaintiff argues in opposition to Midsouth's Motion that the discovery rule should apply, because Congress did not include any exceptions to the main rule in the EFTA, and thus did not intend to preclude application of the discovery rule to §1693m(g). (Rec. Doc. 29, p. 8-9). In support of this argument, Plaintiff relies upon the Supreme Court's analysis of the Fair Credit Reporting Act (FCRA) in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001). However, Congress amended the FCRA after the *TRW, Inc.* opinion to include a specific exception for the discovery rule. See discussion in *Mack v. Equable Ascent Fin., L.L.C.,* 748 F.3d 663, 665 (5th Cir. 2014). This indicates that had Congress intended a specific discovery rule to apply to the

8

EFTA, it would have included such an exception. Therefore, as this Court previously found, relying in part upon *Mack*, the discovery rule does not apply to the EFTA.

## II. Whether Plaintiff timely notified Midsouth of the unauthorized transfers.

As in its first Motion to Dismiss, Midsouth again moves to dismiss Plaintiff's EFTA claims on the grounds that Plaintiff and Mr. Soileau failed to timely notify the bank of the unauthorized transfers as required by §1693g(a), which provides:

> [R]eimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer[.]

Plaintiff alleged that she and her husband met with Midsouth twice in August 2017 to discuss and identify the unauthorized transfers. (Rec. Doc. 24, ¶18-23). Thus, Plaintiff timely notified Midsouth of any unauthorized transfers occurring within the preceding sixty days. Regarding earlier transfers, Plaintiff relies upon the exception for extenuating circumstances. Plaintiff specifically alleged as follows:

> During the period of December 2016 through August 2017, Bernadine and John were in poor health, and each was hospitalized at least once. At other times they were bedridden due to their poor health. (Rec. Doc. 24, ¶11).

> During the time period of December 2016 through August 2017, due to their poor health and reduced mental capacity, Bernadine and John were forced to rely on family members and hired staff to assist with their day-to-day affairs, including such things as cooking, cleaning, driving,

9

> running errands, grocery shopping, retrieval and sorting of their mail and payment of their household bills. (Rec. Doc. 24, ¶12).
>
> The combination of Bernadine and John's advanced age, poor health, limited mobility, diminished mental capacity, often confinement to either bed or a medical facility, reliance on family members and hired staff to help with their day-to-day affairs, concern and preoccupation with the well-being of the other, not receiving their checking account statements, and being advised that their checking account statements were being sent to the address of the family's old business in Houston, were exceptional and extenuating circumstances that contributed to, and resulted in, Bernadine and John not discovering the unauthorized electronic fund transfers at issue in this matter until August 2017. (Rec. Doc. 24, ¶15).

Midsouth argues that Plaintiff's allegations are "bare bones conclusory allegations [which] are not sufficiently plausible for this Court to draw a reasonable inference to establish extenuating circumstances." (Rec. Doc. 25-1, p. 18). The Court disagrees. §1693g(a) specifically identifies hospitalization as an extenuating circumstance, and Plaintiff alleged that she and her husband were hospitalized at least once during that time. Further, the extenuating circumstances exception to the sixty-day notice requirement does not limit such circumstances exclusively to travel and hospitalization, because the phrase, "such as," implies that other circumstances could be considered extenuating. The Court finds that, at this stage of the proceedings, Plaintiff's allegations regarding her and Mr. Soileau's poor health, the circumstances preceding his death, and the fact that someone misled them regarding their missing statements, are sufficient to state an EFTA claim based upon the extenuating circumstances exception to the sixty-day notice requirement.

In the case of extenuating circumstances, §1693g(a) contemplates notice "within a reasonable time under the circumstances." The Court cannot say at this stage in the proceedings that the August 2017 notifications were unreasonably delayed considering the circumstances alleged.

### III. Whether Plaintiff has stated a claim for negligence under Louisiana state law.

The plaintiff in a Louisiana negligence action must prove: (1) existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) the risk of harm to plaintiff was within the scope of protection afforded by the duty; (4) defendant's breach was the cause-in-fact of the harm suffered by plaintiff; and (5) plaintiff was damaged. *Hanks v. Entergy Corp.*, 944 So.2d 564, 579 (La. 2006).

The duty owed by a bank to its customer is set forth in La. R.S. 9:1124:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.

La. C.C. art. 2315, the basis for tort liability in Louisiana, "was utilized prior to the 1991 enactment of La.Rev.Stat. 6:1124 by Louisiana courts to 'impose tort liability against banks that have *violated clear fiduciary duties* to their customers[.]" *Guidry v. Bank of LaPlace*, 94-1758 (La. App. 4 Cir. 9/15/95), 661 So. 2d 1052, 1056, *writ denied,* 95-2498 (La. 1/5/96), 666 So. 2d 295, and *writ denied,* 95-2490 (La. 1/5/96), 666 So. 2d 295, and *writ denied,* 95-2477 (La. 1/5/96), 666 So. 2d 296. Now, the question is one of contract:

> In Louisiana, it is clear that a financial institution only owes to a borrower the duty of complying with the contract between the institution and the borrower. However, no fiduciary duty of loyalty exists between the financial institution and the borrower. "[U]nless expressly set forth in a written agency or trust agreement, no fiduciary responsibilities of a financial institution arise toward customers or third parties."
>
> *Landreneau v. Fleet Fin. Grp.*, 197 F. Supp. 2d 551, 557 (M.D. La. 2002), quoting *Ultra Fabricators, Inc. v. M C Bank and Trust Co.*, 724 So.2d 210, 214 (La.App. 1st Cir.1997), *writ denied,* 98–2682 (La.12/18/98), 732 So.2d 1238.

Beyond the foregoing, inherent in the EFTA (and the Louisiana UCC, in applicable cases) is the bank's duty to reimburse its customers for unauthorized transfers (subject to certain conditions, such as timely notice), and to not allow further unauthorized transfers (after having been properly notified) to occur.

In response to the Court's prior ruling, Plaintiff amended her Complaint to allege facts pertaining to her agreement with Midsouth. She attached a copy of her account agreement with Midsouth, which refers to the Electronic Fund Transfers

12

disclosure for errors relating to electronic fund transfers. (Rec. Doc. 24-1, p. 6). The EFT disclosure provides:

> **UNAUTHORIZED TRANSFERS**
> (a) **Consumer Liability.** Tell us at once if you believe your card and/or code has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission using information from your check. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your account (plus your maximum overdraft line of credit). If you tell us within 2 business days after you learn of the loss or theft of your card and/or code, you can lose no more than $50 if someone used your card and/or code without your permission. Also, if you do NOT tell us within 2 business days after you learn of the loss or theft of your card and/or code, and we can prove we could have stopped someone from using your card and/or code without your permission if you had told us, you could lose as much as $500. Also, if your statement shows transfers that you did not make, including those made by card, code or other means, tell us at once. If you do not tell us within 60 days after the statement was mailed to you, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us in time.
>
> If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time period.

(Rec. Doc. 24-2, p. 4).

The EFT disclosure further sets forth the protocol for error resolution. The account holder is to first call or write Midsouth regarding an error. In response to such notification, Midsouth could require the account holder to submit a written complaint or question (if the initial inquiry was oral). Midsouth is then to "determine whether an error occurred within 10 business days…after [it] hear[s] from [the account holder] and will correct any error promptly." Midsouth may also request

13

additional time to investigate the complaint and is obligated to provide a written response to the account holder's complaint or question. (Rec. Doc. 24-2, p. 4).

Plaintiff alleged that Midsouth failed to investigate the unauthorized transfers upon notification from her and Mr. Soileau at the August 7, 2017 meeting, failed to determine whether an error had occurred, and failed to reimburse them for unauthorized transfers. (Rec. Doc. 24, ¶46-61). The Court finds that these allegations show that Midsouth breached its duty to investigate set forth in the Account Agreement and EFT disclosure. Assuming Plaintiff's allegations as true, if Midsouth had investigated the unauthorized transfers from the Soileau's first account, they conceivably could have uncovered facts which might have prevented further unauthorized transfers from the Soileau's second account. These allegations, in conjunction with Plaintiff's allegations that Midsouth's alleged breached of its duty to investigate caused them to lose more than $1 million is sufficient to state a claim for negligence under Louisiana law.

Midsouth argues that the EFT disclosure is a requirement of federal law and cannot serve as the basis for a Louisiana negligence claim. (Rec. Doc. 25-1, p. 24). This argument is unavailing. As set forth above, negligence claims are dependent upon an agreement between the bank and the consumer which establishes the relevant duties. Plaintiff attached her agreement with Midsouth. The agreement references, and thereby incorporates, the EFT disclosure. Midsouth has not cited any

law which precludes consideration of such an agreement in search of applicable duties merely because the EFT disclosure is mandated by federal law. The source of the duty is irrelevant, so long as it is contained in a written agreement between the bank and the customer.

Midsouth next argues that its duty to investigate is triggered only by timely notice, citing federal regulations which implement a sixty-day notice requirement from the date the periodic statement reflecting the error is sent. (Rec. Doc. 25-1, p. 24-26). Midsouth seems to ignore its own agreement, which explicitly states: "If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time period." Further, Midsouth relies upon *Bernhard v. Capital One Bank, LLC*, wherein the Middle District of Louisiana limited the plaintiff's ability to recover unauthorized transfers about which he did not timely notify the bank. *Bernhard v. Capital One Bank, LLC*, No. CV 05-1025-C, 2007 WL 9702955, at *3 (M.D. La. Mar. 9, 2007). *Bernhard* is inapposite in that it addressed Plaintiff's EFTA claims—not Louisiana negligence claims, where the question is whether a duty was breached. *Bernhard* is also distinguishable. Indeed, unlike the instant case, the *Bernhard* court noted, "nothing in the record reflects any extenuating circumstances which would have prevented plaintiffs from reviewing the bank statements." *Id*. Here, Plaintiff has alleged facts sufficient to show extenuating circumstances—facts which Midsouth was obligated to consider under its agreement with the Soileaus.

Finally, Midsouth's argument fails to acknowledge Plaintiff's allegations that certain unauthorized transfers *did* occur within the sixty-day period preceding the August meetings with Mr. and Ms. Soileau. (Rec. Doc. 24, ¶34-43). Midsouth also does not appear to dispute that the August meetings constituted notice. Yet, Plaintiff alleged that Midsouth failed to engage in any investigation or to reimburse any funds. These allegations are sufficient to state a claim for negligence based upon breach of the duty to investigate.

## **Conclusion**

For the reasons discussed herein, it is recommended that Midsouth's Motion to Dismiss be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 26th day of February, 2020.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE